HAQKALVC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                           15 CR 2627 (ER)

AMIR MEIRI, RAJESH MADDIWAR,
OWEN REID, HERZEL MEIRI,

               Defendants.
------------------------------x
                                       New York, N.Y.
                                       October 26, 2017
                                       10:00 a.m.
Before:

                  HON. EDGARDO RAMOS,

                                       District Judge

                      APPEARANCES

JOON H. KIM,
     Acting United States Attorney for the
     Southern District of New York
SEBASTIAN SWETT
ANDREW MARK THOMAS
     Assistant United States Attorneys

JAMES ROTH
DANIEL FRIEDMAN
     Attorneys for Defendant A. Meiri

MICHAEL L. SOSHNICK
     Attorney for Defendant Maddiwar

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant Reid
ANNALISA MIRON
SARAH BAUMGARTEL

JOSEPH R. CONWAY
MATIN EMOUNA
     Attorneys for Defendant H. Meiri
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    THE DEPUTY CLERK:  In the matter of the United States
2 of America versus Alvarenga, et al.
3    Counsel, please state your names for the record.
4    MR. THOMAS:  Good morning, your Honor.  Andrew Thomas,
5 and Sebastian Swett, for the United States.  We're joined today
6 by paralegal Jenny Satinover and law extern Tom Enering.
7    THE COURT:  Welcome.
8    MR. EMOUNA:  Good morning, your Honor.  On behalf of
9 Herzel Meiri, Matin Emouna.
10    MR. CONWAY:  Also on behalf of Herzel Meiri, Joseph
11 Conway.
12    MR. ROTH:  Good morning, your Honor.  James Roth, on
13 behalf of Amir Meiri, and with me is Daniel Friedman, who's
14 also representing him.  He's in custody; he's beside me.
15    THE COURT:  I see, yes.
16    MS. MIRON:  Good morning.  Federal Defenders, by
17 Annalisa Miron and Sarah Baumgartel, on behalf of Owen Reid,
18 who's in the jury box.
19    MR. SOSHNICK:  Good morning, your Honor.  I'm for Raj
20 Maddiwar.  Michael L. Soshnick.
21    THE COURT:  Good morning to you all.
22    This matter is on for a status conference, I believe,
23 that was called for by the defense.  Is that correct?
24    MR. ROTH:  Yes, it is.
25    THE COURT:  So who wants to tell me what you want to

1  do?

2         MR. ROTH:  Thank you, your Honor.  I'm prepared to
3  speak on behalf of the defendants.

4         Your Honor, what occasioned this request for a status
5  conference, in light of the pending trial date, was that we
6  have been, the defense has been, earnestly trying to gather
7  documents from the banks which were involved in the lending on
8  the subject houses which were the subject of the indictment.
9  We had extensive subpoenas outstanding.  Many of them were
10 complied with, but they were not all complied with.  We just
11 received -- I think it was late last night -- notice that one
12 of the banks, Ocwen, did comply just now and the documents are
13 in New York.

14         The significance of the request and the documents is,
15 we believe that the information contained in those documents
16 will provide us the ability to reach an agreement with the
17 government, hopefully, in terms of resolving this short of a
18 trial.  Specifically, those documents, your Honor, address the
19 so-called loss factor, which has been in contention in this
20 case since the very beginning.  And those documents contain
21 what we call the BPOs, appraisals, and other documents of their
22 calculus of how the banks calculate their short sale price.

23         So we are confident, after we get those documents and
24 we've been in contact with the government -- we've narrowed the
25 issues in terms of the other enhancements, we've narrowed

1  them -- we believe, we hope, to arrive at a just disposition
2  for the government and for the defendants.  And, if not, we
3  have discussed the possibility if, for instance, the loss
4  factor is still outstanding, that we do a carve-out, and if we
5  have to go to a Fatico on that issue, we will do that.
6       But, to be clear, that at least speaking on behalf of
7  my client, we have never denied responsibility for the actions
8  that we took.  He's willing to accept responsibility and move
9  forward.  It's just a question of the contours of any
10 disposition.
11      THE COURT:  Okay.
12      MR. CONWAY:  Just so you know the volume, your Honor,
13 of what we're talking about, you may remember we asked you to
14 sign numerous subpoenas.  I don't know the exact numbers but I
15 think there were 17 subpoenas that were going to 17 different
16 financial institutions that were covering, I believe, 42 or 43
17 loans.  Ocwen is the biggest of them, and I believe it covers
18 about ten loans.  And we were notified last night, we could
19 make a trip to an attorney's office in the city today to pick
20 up a large volume of documents.
21      We've also received approximately 20 to 22 other loans
22 from other financial institutions, and maybe a few we're not
23 going to get because banks were sold or merged or they can't
24 find the files, but I think with what we've gotten or what
25 we're going to get today and what we have, we'll probably have

1    at least 30 files.
2            THE COURT:  These are 30 individual mortgages?
3            MR. CONWAY:  Yes.
4            THE COURT:  That doesn't sound like a whole lot.
5            MR. CONWAY:  It's not, but each one contains, you
6    know, two, three hundred pages in them, if not more, and
7    there's a lot to go through.
8            So we're just getting them in.  We want to go through
9    them.  It's probably going to take us the next 30 days or so.
10   And, as Mr. Roth said, we'd like to then see what we can do
11   with this case, with the government, but with a December 3rd
12   trial date, that's going to be very difficult to do, which is
13   why we're here seeking an adjournment of that trial date.
14           THE COURT:  How long is this case going to take to
15   try?
16           MR. CONWAY:  I would defer to the government on that,
17   Judge.
18           MR. THOMAS:  Your Honor, the government currently
19   estimates its case in chief would be approximately two weeks.
20           THE COURT:  Two weeks?
21           MR. THOMAS:  That's right.
22           THE COURT:  Okay.  Does anyone else on the defense
23   side want to be heard on the request?
24           MS. MIRON:  No, your Honor.
25           MR. ROTH:  We had talked about with the government a

1   60-day period of time, of course depending on the Court's
2   availability.
3            THE COURT:  Yes, I was going over my schedule.  So 60
4   days from December would be February.  I have currently cases
5   set for trial January, February, March.  I do have a case that
6   I could put off in early April, so that's probably the earliest
7   that I can see you, Monday, April 30, I believe.
8            THE DEPUTY CLERK:  2.
9            THE COURT:  Monday, April 2.
10           MR. ROTH:  That would work for us, Judge.
11           MR. SOSHNICK:  That's agreeable, your Honor.
12           THE COURT:  Is there any major objection that you want
13  to make?
14           MR. THOMAS:  No major objection, your Honor.
15           THE COURT:  Okay.  I would have heard you, and
16  scheduled for April 2.
17           So then we're scheduled for April 2.
18           Just one other issue:  Mr. Conway, I know you're
19  running for something.
20           MR. CONWAY:  I'm always running.
21           MR. ROTH:  Running away from this case.
22           MR. SOSHNICK:  He's trying to catch a bus.
23           MR. CONWAY:  Since you raise it, Judge, I am on the
24  ballot in November for a county court judge spot in Nassau
25  County.  If I win, Mr. Emouna is here, and my law partner,

1   Mr. Larusso, is also willing to jump in, and April should not
2   be any problem.
3            THE COURT:  I just wanted to make sure there was going
4   to be no request on the basis of your maybe stepping down.
5            MR. CONWAY:  No, your Honor.  Thank you.
6            THE COURT:  Okay.
7            Is there anything else that we need to do today?
8            MR. THOMAS:  Nothing unrelated to this, your Honor.
9   The government would ask that the Court's schedule for this
10  trial date also include 404(b) notice and the like, that would
11  govern both the government and also the defendants.  It's come
12  to our attention that there may be some effort by the
13  defendants, at any trial that would happen, to attack certain
14  homeowner witnesses in ways that are, I think, worthy of
15  bringing to the Court's attention and then to litigate in
16  advance of trial for efficiency.
17           THE COURT:  So what are you asking me to do?
18           MR. THOMAS:  I think currently the Court's pretrial
19  schedule sets a motion in limine date.
20           THE COURT:  Yes.
21           MR. THOMAS:  The government is just requesting that
22  whatever new dates are on the calendar include 404(b) or
23  character evidence notice dates that apply to both parties.
24           THE COURT:  Okay.  I typically do a month from the
25  trial date.  I think that's the schedule currently in place.

1   So, a month prior to April 2, if it's not a weekend, motions in
2   limine, proposed jury charge, proposed verdict form, proposed
3   voir dire questions, should be filed; responses due two weeks
4   after that to the other side's submissions; and a final
5   pretrial on the Thursday before April 2.
6              THE DEPUTY CLERK:  March 29 at 2:30 p.m.
7              THE COURT:  That will be the final pretrial.
8              Anything further?
9              MR. THOMAS:  Your Honor, the government would move to
10  exclude time between today and April 2, the trial date, from
11  computation under the Speedy Trial Act, on the basis of the
12  defendants' representations it would be in the interests of
13  justice to facilitate the defendants' review of the discovery
14  the defendants have obtained, and to negotiate, as they see
15  fit, with the government.
16             THE COURT:  Any objection?
17             MR. SOSHNICK:  No objection.
18             MR. CONWAY:  No, your Honor.
19             MR. ROTH:  No objection.  I will note, your Honor,
20  especially since my client is in custody, I have had extensive
21  conversations with him about this waiver of speedy trial.  He
22  consents to it despite the somewhat harsh conditions he's under
23  at the MDC.  I don't know if it's percolated up to your Honor,
24  but MDC now is just recently under lock-down for two weeks.
25  The Bloods were fighting and actually stabbing -- I don't know

1     if someone wound up dying from the MS-13.  So, unfortunately,
2     his conditions of pretrial confinement have become more sort of
3     a maximum security there, but he believes it's in his interests
4     to have a just resolution of this case, so he's prepared to
5     waive his speedy trial rights.
6              THE COURT:  I have not heard about the situation at
7     the MDC.
8              MR. ROTH:  It's unfortunate.
9              THE COURT:  Okay.  I will exclude the time between now
10    and April 2, under the Speedy Trial Act, for the reasons set
11    forth on the record by defense counsel.
12             Is there anything else that we need to do today?
13    Mr. Emouna?
14             MR. EMOUNA:  Yes, correct, your Honor.  Good morning,
15    your Honor.  Just one more thing:  We brought a letter --
16    Mr. Conway filed a motion several weeks ago in regards to some
17    assets using funds to be used from escrow to pay off.  That
18    motion is pending.  October 30th is the government's time to
19    respond.
20             THE COURT:  I thought that motion was withdrawn
21    because of --
22             MR. EMOUNA:  No.  What happened, your Honor, just is
23    to refresh your recollection, we filed an order to show cause
24    in Queens County Supreme Court with the state, which we were
25    able to stay up to 60 days.  We immediately wrote a letter to

1   your Honor and the Court providing that we have adjourned it
2   because there was time constraint on the government, which was
3   unfair.  They had only 24 hours to respond.  So I immediately
4   called Mr. Thomas and said, listen, we got the stay in federal
5   court and in state court, we're going to file it with the
6   Court, we put it to your attention, and you gave them to
7   October 30th to respond.  So that case is still pending.  That
8   wasn't withdrawn, Judge.
9               THE COURT:  Okay.  And what's happening in the state?
10  It was an unusual request, to me.
11              MR. EMOUNA:  I'll explain to you, because I know
12  it's -- it's really a civil action that's coming to a criminal
13  action.  No matter what happens in this case, your Honor, we
14  have to maximize the estate for all potential creditors,
15  whoever they might be, be it the individual homeowners, be it
16  our clients if their properties go back to them and they're not
17  subject to forfeiture, or be it the banks.  We have to maximize
18  the estate at any point, much like a bankruptcy court.
19              From the outset, I have brought to the attention of
20  the Court, I think, in even pretrial detention memo, that we
21  have to keep the estate as a whole in status quo.  Some of the
22  properties are being lost due to the fact that taxes haven't
23  been paid, no one can pay the taxes --
24              THE COURT:  And you want me to absolve your client of
25  having to pay the taxes?

1          MR. EMOUNA:  No, no, absolutely not, your Honor, no,
2     no, absolutely not.  What happens is:  There are several
3     properties that were sold.  Money is in escrow with an
4     attorney, Joseph Degaetano.  That money hasn't been touched.
5     And I have spoken to Mr. Thomas, and that's going to be moved
6     to another independent attorney or to the government
7     themselves.  That money is going to go there.  That's around
8     400,000, I think, that's there.
9          Right now, what is owed on a tax sale is only, I
10    think, 150 or 200 thousand; I don't remember the number off the
11    top of my head.  The property itself is worth upward of 4-1/2
12    million pursuant to appraisals that we have, which were very
13    conservative.
14         In addition, there was a zoning change which gives us
15    the right to build high rises on that.  Whoever becomes the
16    owner of that property, the property value has greatly changed,
17    no matter what happens.  So I can't lose $200,000, Judge, to
18    lose a $5 million property.  The property is worth $5 million.
19    If it goes to an auction, everything is lost.  These auctions
20    are fire sales.  They're going to pay pennies to a dollar.
21    Somebody else is going to get the benefit.
22         THE COURT:  Why is the property being auctioned?
23         MR. EMOUNA:  Because there was taxes owed from 2015,
24    Judge, from the time of the indictment on.
25         THE COURT:  So you want me to stop that auction?

1       MR. EMOUNA:  No, no.  I just want release of the

2   monies.  I just want to use the 200,000 that's in escrow --

3   that's the creditors' money.  It's just the bank to pay off the

4   auction, so maximizing the estate, that's what I'm doing.

5       THE COURT:  Has the government developed a view on

6   this?

7       MR. THOMAS:  Yes, your Honor.  To cut through some of

8   the issues here:  What the proposal is, is to spend money that

9   is destined to restitute victims to pay off taxes on a building

10  that the Meiris never paid taxes on.  So the government opposes

11  that strenuously.

12      THE COURT:  Okay.

13      MR. THOMAS:  I think what we have proposed to them,

14  and would reduce to writing on October 30th in the letter to

15  the Court, is that the U.S. Marshals Service and the United

16  States Attorney's Office have mechanisms to facilitate more

17  economical auctions of property than perhaps the tax lien

18  system in the city would facilitate, so that the total recovery

19  that would be credited against the restitution order to come or

20  the victims would be able to obtain would be as high as

21  possible under the circumstances, but the government will not

22  consent to spending victim money to pay a tax lien.

23      THE COURT:  Okay.  So then we will wait to get the

24  government's papers.

25      MR. EMOUNA:  I just wanted to bring that up.  And,

1  obviously, if need be, we will be more than happy to come and
2  have a hearing on that --
3            THE COURT:  Very well.
4            MR. EMOUNA:  -- to discuss that.
5            MR. CONWAY:  Judge, just so you understand, and I'm
6  sure you do, that potential property that's worth 4 million or
7  potentially more is liened by the government, and it's
8  something that can be used for restitution and/or forfeiture to
9  resolve the case.  That's why we don't want to lose it.
10           THE COURT:  And I'm sure the government understands
11 that, but I'll see to see what they say.  Okay?
12           Anything further, Mr. Roth?
13           MR. ROTH:  No.  Thank you, your Honor.
14           MR. SOSHNICK:  Thank you very much, your Honor.  Have
15 a good day.
16                           * * *