UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES,

                Plaintiff,

– against –

HERZEL MEIRI,

                Defendant.

**ORDER**

15 Crim. 627

Ramos, D.J.:

    Before the Court is Herzel Meiri's application for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), in light of the COVID-19 pandemic and the heightened risk it presents to him because of numerous heart and lung conditions. Doc. 714. For the following reasons, Meiri's application is DENIED.

**I.    BACKGROUND**

    Herzel Meiri led a predatory scheme to defraud vulnerable homeowners and ultimately take ownership of their properties. Dozens of homeowners were targeted, with several ultimately losing their homes and many still actively engaged in proceedings to avoid this outcome. It was a scheme the Court recognized as "Dickensian in its depravity." Doc. 423 at 41. On April 10, 2018, Meiri pleaded guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. *See* Minute Entry for Apr. 10, 2018. Meiri was sentenced on August 30, 2018. *See* Minute Entry for Aug. 30, 2018. At sentencing, the Court heard from attorneys from both parties, as well as from several victims of the scheme. The calculated guidelines range was 121 to 151 months of imprisonment. In determining the appropriate sentence, the Court considered, among other factors, the severe nature of Meiri's crimes, as well as his many underlying health conditions. After considering these factors, the Court imposed a below-guidelines sentence of 120 months, followed by three years of supervised release. Doc. 423 at 39.

Meiri began serving his sentence on November 18, 2018 at the FCI Otisville Satellite Camp (the "Camp"). Doc. 714 at 1–2. Meiri asserts, and the Court has no reason to doubt, that an inmate at the Camp tested positive for COVID-19 on June 12, 2020. Doc. 722 at 1. The Bureau of Prisons ("BOP") then locked down the Camp and soon decided to test all inmates housed there. *Id.* Of the 58 inmates housed at the Camp, 18 tested positive for the virus, and five tests were inconclusive. Meiri's test was negative. *Id.* BOP has since emptied the Camp, placing inmates who tested positive in isolation, and placing inmates with negative tests—like Meiri—in individual cells at the main prison facility at Otisville to quarantine. *Id.* at 2.

Meiri filed this motion for compassionate release on June 15, 2020. Doc. 714. The Government submitted its opposition on June 19, 2020, Doc. 718, and Meiri submitted his reply on June 24, 2020, Doc. 722.

## II.   LEGAL STANDARD

### A.  18 U.S.C. § 3582

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Crim. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks and citation omitted). A court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur: either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Once a petition for compassionate release is properly brought before a court, its discretion is guided by the policy statement in U.S. Sentencing Guidelines § 1B1.13. *See id*. The Guidelines place two conditions on a determination of early release:

> (1) There are extraordinary and compelling reasons that warrant the reduction; and
>
> (2) A situation where "the defendant is not a danger to the safety of any other person or to the community."

U.S. Sentencing Guidelines § 1B1.13. The Guidelines include as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* cmt. 1(A)(ii)(I).

When determining whether a prisoner is a danger to the community, section 1B1.13 refers to 18 U.S.C. § 3142(g), which in turn lists the following factors to be considered:

> (1) the nature and circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### B. 18 U.S.C. § 3662

Separately, BOP has discretion to temporarily release prisoners pursuant to 18 U.S.C. § 3622. This is commonly referred to as a "furlough." Such release must be "consistent with the purpose for which the sentence was imposed and any pertinent

policy statement issued by the Sentencing Commission," as well as "consistent with the public interest." 18 U.S.C. § 3622. There must also be "reasonable cause to believe that [the] prisoner will honor the trust to be imposed in him." *Id.* As is relevant here, the BOP may authorize such release, under prescribed conditions, for the purpose of "obtaining medical treatment not otherwise available," or "engaging in any other significant activity consistent with the public interest." *Id.* § 3622(a).

## III. DISCUSSION

Meiri petitions this Court for compassionate release to supervised home confinement. His stated goal is to "serve a portion of his sentence under supervised home confinement until such time that his cardiac and pulmonary conditions do not make him so vulnerable to both contracting COVID-19 while incarcerated, and if infected, experiencing severe medical complications due to his weakened health." Doc. 714 at 1. He urges that "[t]his could be a matter of months," pointing to the possibility of a vaccine, *id.*, and posits that he would "remain in BOP custody" but be supervised by Probation, *id.* at 5. The Government opposes Meiri's request. There is no doubt that Meiri has waited more than thirty days since submitting his request to BOP, and, as such, is eligible to petition the Court for compassionate release; however, the Government argues that compassionate release cannot be temporary, as Meiri envisions, and that, in any event, Meiri does not merit relief pursuant to § 3582. The Court agrees with the Government on both of these points, but recommends that the BOP consider Meiri for furlough.

### A. The Nature of Relief allowed by § 3582

Meiri argues—without citing a single case—that "section 3582(c)(1)(A), by its terms, speaks to the modification of a term of imprisonment and authorizes the imposition of a 'term of supervised release with or without conditions.'" Doc. 722 at 2. "The natural meaning of this text," he argues, "is that Congress conferred on the Court the power, consistent with its wide sentencing discretion, to modify a sentence to include a term of

4

supervised release," as well as to impose additional conditions, like "determin[ing] the term, period, or duration of that release, and to condition that release on supervision by the Probation Office, electronic monitoring, and the like—if the applicant otherwise satisfies the requirements for compassionate release." *Id.*

Unfortunately for Meiri, other courts have disagreed with his interpretation, and this Court must as well. "[Section] 3582(c) does not authorize resentencing. Instead, it permits a sentence reduction within the narrow bounds established by the Commission." *Dillon v. United States*, 560 U.S. 817, 831 (2010). Thus, the only way to grant relief under § 3582(c), "is to reduce [a] sentence to time served—in other words, to *permanently* release [a prisoner]." *Roberts*, 2020 WL 1700032, at *3. Even if the Court were to agree with Meiri that a temporary release was warranted, "Section 3582(c) does not give the Court the power to do that." *Id.*

### B.  Application of § 3582 to Meiri's Case

The Government does not dispute that Meiri has myriad health conditions that put him at higher risk of developing severe illness should he contract COVID-19. Nor does it contend in earnest that Meiri has not demonstrated an "extraordinary and compelling reason" for relief. Doc. 718 at 5. Rather, it argues that a reduced sentence pursuant to § 3582 is unwarranted in spite of these circumstances.

In considering whether to grant relief pursuant to § 3582(c), courts are instructed to consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Here, "the nature and circumstances of the offense," are undoubtedly serious. 18 U.S.C. § 3553(a)(1). As the Government argued at sentencing, the fraud Meiri and his co-conspirators engaged in "was professional, purposeful, and sustained over a period of years." Doc. 415 at 5. From the lengthy docket in this case, it is clear that many victims are still struggling to regain title to their homes. The Court itself described the scheme as "Dickensian in its depravity." Doc. 423 at 41. A sentence reduction at this point would fail both to reflect the "seriousness of the offense" and to

5

afford "adequate deterrence." *See* 18 U.S.C. § 3553 (a)(2). Meiri and the Government disagree as to how much of his sentence Meiri has yet to serve; but regardless of how Meiri's remaining time in prison is calculated, it is indisputable that he has, as of now, served a very short sentence given the severity of his crimes. Moreover, the Court gave strong consideration to Meiri's health conditions at the time of sentencing, and still found that 120 months of imprisonment was merited. At the time, the Court noted that this was one such case where the guidelines range of 121-151 months of imprisonment seemed almost too low, and yet it still imposed a sentence below that range after taking Meiri's individual circumstances, including his health, into account. Doc. 423 at 41–42. Given these and the numerous other reasons reviewed at sentencing, the Court finds that a lengthy term of imprisonment is still required for Meiri.

### C.  Recommendation to BOP

Undoubtedly, however, the world has changed since Meiri's sentencing. Although Meiri's case does not warrant a sentence reduction, he may well be a candidate for the temporary release he seeks pursuant to 18 U.S.C. § 3662(a). Of course, this Court does not have jurisdiction to order such a furlough. "The statute could not be clearer as to whom it vests with the authority to grant temporary release . . . . [It] gives authority over temporary-release decisions 'to the Bureau of Prisons (BOP), not the federal courts.'" *Roberts*, 2020 WL 1700032, at *3 (internal quotation marks and citation omitted) (collecting cases). But nothing "prevents this Court from recommending" that such temporary release would be appropriate. *United States v. Schaefer*, No. 07 Crim. 498 (LJL) (S.D.N.Y.), Doc. 73 at 4 (Apr. 6, 2020). As such, given Meiri's health conditions, the Court strongly recommends that BOP consider whether a furlough would be appropriate in this case.

## IV. CONCLUSION

For the foregoing reasons, Meiri's application for compassionate release is DENIED. The Court recommends that BOP consider him for furlough pursuant to 18 U.S.C. § 3662(a). The Clerk of Court is respectfully directed to terminate the motion, Doc. 714.

SO ORDERED.

Dated: July 2, 2020
New York, New York

EDGARDO RAMOS, U.S.D.J.