

> Third-Party Petitioners Advill Capital LLC and Petermark II LLC are granted leave to file a motion for summary judgment. The Government and Petitioner Holmes are granted leave to file an opposition. The motion is due June 15, 2021, any opposition is due July 6, 2021, and the reply is due July 13, 2021. The May 27, 2021 conference is hereby adjourned. The Clerk of Court is respectfully directed to terminate the motion. Doc. 784. So ordered.
>
> _____
> Edgardo Ramos, U.S.D.J
> Dated: 5/24/2021
> New York, New York

May 10, 2021

<u>VIA ECF</u>
Hon. Edgardo Ramos
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      **Re: *U.S.A. v. Alvarenga et al.*, 15-cr-627 (ER), Forfeiture Proceeding**

Dear Judge Ramos:

  In accordance with Rule 2.A.ii of the Court's Individual Rules and the Courts' Endorsed Order of May 5, 2021 (*see* Docket Entry ("DE") 785), Petitioner and Hillside Fraud Team victim Vincent Holmes submits this letter in response to the request by Petitioners Petermark II LLC (hereinafter "Petermark") and Advill Capital LLC (hereinafter "Advill," collectively "Hard Money Lender Petitioners") for a pre-motion conference concerning the Hard Money Lender Petitioners' intent to move for summary judgment. *See* DE 784.

  There is no legitimate basis for the Hard Money Lender Petitioners to win summary judgment; Petermark and Advill cannot meet the high standard for that relief. To the contrary—as the United States has demonstrated in previous briefing—Petermark and Advill's cannot establish that they are "bona fide encumbrancers," entitled to recovery under the 21 U.S.C. § 853. The central factual questions of the Hard Money Lenders' understanding of the fraudulent scheme, and their relationship with the Hillside Fraud Team are, at a minimum, disputed and not susceptible to dispositive relief. As the rightful owner of the Chauncey property, Mr. Holmes requests to participate in the May 27 pre-motion conference and—should the Court entertain briefing—Mr. Holmes requests the opportunity to oppose the Hard Money Lender Petitioners' summary judgment motion.

  **I. Mr. Vincent Holmes and his Late Wife Mrs. Olive Maud Holmes Were Victims of the Hillside Fraud Team and are Entitled to Regain Title to Their Home Through the Forfeiture Proceeding.**

  Mr. Vincent Holmes and his wife Mrs. Olive Maud Holmes purchased their home at 644 Chauncey Street in Brooklyn in 2001. *See* Holmes Petition, Docket Entry ("DE") 367, ¶ 7. In 2013, when Mr. and Mrs. Holmes were struggling to pay their mortgage, they were targeted by Homeowner Assistance Services of New York ("HASNY"), a corporate front of the Hillside Fraud Team. *Id*. at ¶ 8. Mr. and Mrs. Holmes were elderly homeowners extremely vulnerable to the Hillside Fraud Team's machinations: Mr. Holmes is functionally illiterate and Mrs. Holmes,

**Brooklyn Legal Services** | 105 Court Street, 4th Floor, Brooklyn, NY 11201
Phone: 718-237-5500 | Fax: 718-855-0733 | www.LegalServicesNYC.org
**Hon. Betty Staton**, President | **Tanya Wong**, Project Director
**Deborah Howard**, Board Chair



who has passed away since filing the petition, was functionally blind. *Id*. at ¶ 6. Like so many other victims of the Hillside Fraud Team, Mr. and Mrs. Holmes trusted HASNY and the employees that they met in the office, but soon found that their hopes had turned to a nightmare. Two days after their September 2014 meeting at the HASNY office, Amir and Herzel Meiri showed up at Mr. and Mrs. Holmes' property, claiming to own the Holmes' home. *Id*. at ¶ 19.

Since they purchased their home in 2001, Mr. and Mrs. Holmes have continuously occupied their home and maintained to anyone who asked that they are the rightful owners of their property. DE 367, ¶ 23. They did not give permission to HASNY, the Meiris, or any representative of the Hillside Fraud Team to take title to their home, nor did they did they give the Hillside Fraud Team or the Hard Money Lender Petitioners permission to place a mortgage on their property. *Id*. at ¶ 21. When they had the opportunity, Mr. and Mrs. Holmes zealously advocated for the return of their property at every turn: they opposed the Hillside Fraud Team's eviction efforts; rescinded the purported deed under New York's Home Equity Theft Prevention Act; filed civil rights complaints with the U.S. Department of Housing and Urban Development[1]; filed and pursued a quiet title action against all parties; including the Hard Money Lender Petitioners; opposed the Hard Money Lenders' attempts to foreclose on their property; and finally filed an ancillary petition in this forfeiture proceeding.

Like other victims of the Hillside Fraud Team, many of whom have already entered into stipulations to regain title to their homes, *see, e.g.*, DE 581, 582, 587, Mr. Holmes is a crime victim who deserves to regain title to his property pursuant to 21 U.S.C. § 853(n)(6)(A), free of obligations incurred by the Hillside Fraud Team without his or his late wife's permission.

## II. As the United States Has Already Submitted, the Hard Money Lender Petitioners Cannot Establish That They Were Bona Fide Encumbrancers Because They Had Notice of the Hillside Fraud Team's Scheme.

Although the Hard Money Lender Petitioners claim in their pre-motion letter that their mortgage transaction was "arms length" and that they are "bona fide lenders for value," *see* DE 784 at p. 2, the evidence reveals otherwise. As the United States carefully outlined in opposition to Petermarks' motion for summary judgment on its petition against another property, 2146-2148 Fulton Street, Petermark had reason to know, and to question, the fraudulent nature of both transactions given the many indicia of fraud that were present. *See* DE 690.

The Hard Money Lender Petitioners' interactions with the Hillside Fraud Team were not incidental. As their principal's testimony at two separate depositions demonstrates, Petermark and Advill's interactions with the Hillside Fraud Team stretched to over nearly a year, from first encounter to collection and the release of mortgaged properties months after the unsealing of the federal indictment and the arrest of multiple co-conspirators. During that time the Hard Money

---

[1] Upon concluding its investigation, HUD found that all respondents, including members of the HIllside Fraud Team and the Hard Money Lender Petitioners, "may have engaged in a pattern or practice of discrimination based on race or national origin in violation of the Fair Housing Act" and forwarded the complaints and investigation files to the Department of Justice for further action under 24 C.F.R. S 103.550(b). DE 367-12, Ex. L to Homes Petition.

Lender Petitioners and principals of the Hillside Fraud Team exchanged dozens of emails, communicated by phone and text, and met in person at the Hillside Fraud Team's premises (vividly labeled "Homeowner Assistance Services of New York," an entity about which the Hard Money Lender Petitioners' principal claimed to have no awareness). Petermark and Advill considered multiple stolen properties to secure their loans, the principal visited at least some of the properties, and the lenders engaged in at least four distinct transactions over the course of six months, for which they reviewed hundreds of pages of property assessments and title reports, all of which loudly displayed red flags that no seasoned real estate professional operating in New York City could or would ignore.[2] These accumulated red flags prevented the Hard Money Lenders from prevailing on partial summary judgment in Mr. and Mrs. Holmes' state court action—for relief similar to that they seek here—and permitted the Holmes to win partial summary judgment in 2019 on Petermark and Advill's equitable subrogation counterclaim in that action.

Because of the substantial red flags revealed over six months of negotiations regarding four transactions and 8 properties, even if the Court permits briefing on the matter, the Hard Money Lender Petitioners cannot meet the summary judgment standard to establish themselves as "bona fide encumbrancers" entitled to recover in this forfeiture proceeding.

**III.  Petitioner Vincent Holmes Requests to Participate in the May 27 Conference and to Submit Opposition to the Hard Money Lenders' Motion for Summary Judgment.**

Because the Hard Money Lender Petitioners seek to force a sale of Mr. Holmes' home or to place an equitable lien on his property, Mr. Holmes' rights and future in his home are directly implicated in this briefing. Mr. Holmes has actively sought the rightful return of his property for over six years in multiple proceedings, court cases, and complaints. He now seeks the opportunity to continue advocating for his rights by participating in the May 27 pre-motion conference scheduled by the Court and by opposing the Hard Money Lender Petitioners' motion according to the Court's established schedule.

Respectfully,

/s/
Rachel Geballe
718-237-5573

Cc:   All counsel via ECF

---

[2] The Hard Money Lender Petitioners failed to fully comply with its discovery obligations. As recently as January 2021, counsel for the Hard Money Lender Petitioners indicated to the undersigned that his clients were still reviewing Mr. Holmes' deficiency letters. On May 3, 2021, immediately prior to filing this pre-motion letter, counsel for the Hard Money Lender Petitioners reported that the Hard Money Lender Petitioners believed production was complete and they would make no further production. While Mr. Holmes is not seeking a to compel production, should the Court permit briefing on this motion and deny the Hard Money Lender Petitioners summary judgment, Mr. Holmes will seek a schedule from the Court's to complete expert discovery prior to a hearing in this matter.