S4 15-CR-627 (ER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

AMIR MEIRI, et al.,

                                                      Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF CITY'S MOTION FOR RELIEF FROM FINAL FORFEITURE ORDER PURSUANT TO RULE 60(b)**

*GEORGIA M. PESTANA*
*Corporation Counsel of the City of New York*
*Attorney for Non-Party Petitioner, City*
*100 Church Street*
*New York, N.Y.  10007*
*Of Counsel Joy Anakhu*
*Tel:  (212) 356-2048*
*Matter No. 2021-040453*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

STANDARD OF REVIEW .................................................................................................... 4

ARGUMENT

    POINT I

        THE CITY IS ENTITLED TO RELIEF FROM THE
        FINAL ORDER BASED ON EXTRAORDINARY
        CIRCUMSTANCES ................................................................................. 5

        1.    The City Has Valid Interests In The Properties
             That Must Be Preserved ................................................................ 5

        2.    The City Has Good Cause For Its Delay In Filing
             An Ancillary Petition .................................................................... 8

        3.    Reopening The Forfeiture Case With Respect
             To The City's Interest Will Not Unfairly
             Prejudice Other Parties ................................................................ 9

    POINT II

        THE CITY'S MOTION IS MADE WITHIN A
        REASONABLE TIME ............................................................................ 11

CONCLUSION ..................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                       **Pages**

Austin v. Donahoe,
   307 F.R.D. 264 (D.D.C. 2014)......................................................................................5

Buck v. Davis,
   137 S.Ct. 759 (2017)..................................................................................................4

Cruz v. Credit Control Servs., Inc.,
   U.S. Dist. LEXIS 519225 (E.D.N.Y. Nov. 8, 2017)..................................................10

Exxon Mobil Corp. v. N.Y. City Dep't of Envtl. Prot.,
   114 N.Y.S.3d 88, 178 A.D.3d 696
   (N.Y. App. Div. 2d Dep't 2019) ................................................................................8

Kotlicky v. U.S. Fidelity & Guar. Co.,
   817 F.2d 6 (2d Cir. 1987)...........................................................................................4

Liljeberg v. Health Services Acquion Corp.,
   486 U.S. 847 (1988) ..................................................................................................4

Miss Jones LLC v Brown,
   2020 US Dist LEXIS 148140 (EDNY Aug. 14, 2020)...............................................8

Nacipucha v City of New York,
   18 Misc 3d 846 (Sup Ct, Bronx County 2008) .........................................................8

Nasir Holding Group 101 Corp. v. The City of New York et al.,
   Index# 529804/2021 ................................................................................................3

Pacheo v. Serendensky,
   393 F.3d 348 (2d. Cir. 2004)....................................................................................11

PRC Harris, Inc. v. Boeing Co.,
   700 F.2d 894 (2d Cir. 1983)......................................................................................4

Sac Fund II 0826 v Burnell's Enters., Am. Bug Co., A/K/A Am. Bug Co., Ronald
   Bassett As Ex'r of the Estate of Adell D. Bassett,
   2019 US Dist LEXIS 193952 (EDNY Sep. 7, 2019)..................................................9

Sagy v City of New York,
   2019 NY Slip Op 33516[U] (Sup Ct, Queens County 2019) .....................................9

**Cases**                                                                                                      **Pages**

United States v John,
   2020 US Dist LEXIS 36708 (EDNY Mar. 2, 2020) .................................................................8, 9

United States v. Peters,
   732 F.3d 93 (2d Cir. 2013) ..........................................................................................................11

United States v Peterson,
   2013 US Dist LEXIS 64151 (S.D.N.Y. May 1, 2013) ...........................................................4, 5

Wang v. IBM,
   2021 U.S. App. LEXIS 2205 (2d Cir. 2021) ...............................................................................11

**Statutes**

21 U.S.C. §853(n) ...............................................................................................................................1, 2

21 U.S.C §853(n)(2) .............................................................................................................................11

CPLR §311(a)(2) ....................................................................................................................................8

Fed. R. Civ. P 4(j)(2)(B) ........................................................................................................................8

Fed. R. Civ. P. 60(b) ....................................................................................................................1, 4, 12

Fed. R. Civ. P. 60(b)(6) ......................................................................................................................4, 5

Fed. R. Civ. P. 60(c) ..........................................................................................................................5, 11

Fed. R. Civ. P. G4(b)(i) ..........................................................................................................................8

Fed. R. Crimin. P. 32.2 (b)(6)(A) .........................................................................................................2

NYC Admin. Code §16-118(2)(a) ........................................................................................................9

NYC Admin. Code §27-2005 ................................................................................................................9

NYC Admin. Code §27-2017 ................................................................................................................6

NYC Admin. Code §27-2026 ................................................................................................................6

NYC Admin. Code §27-2027 ................................................................................................................6

| **Statutes** | **Pages** |
|---|---|
| NYC Admin. Code §27-2056.4 | 6 |
| NYC Admin Code §28-301.1 | 9 |
| NYC Admin. Codes §27-2001-§27-2152 | 6 |
| NYC Charter Chapters 26 Department of Buildings, | 5 |
| NYC Charter Chapters 31 Department of Sanitation, | 5 |
| NYC Charter Chapters 61 Department of Housing Preservation and Development | <u>5</u> |
| NYC Charter Chapters 71 Department of Transportation | <u>5</u> |
| NYC Charter Chapter 17, §394(a) | 8 |

**PRELIMINARY STATEMENT**

Non-Party Petitioner, The City of New York (hereinafter, the "City") submits this motion for relief of the Final Order of Forfeiture ("Final Order"), dated December 6, 2019, (see ECF No. 664), and pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). The relief sought concerns properties known as 1586 Eastern Parkway, Brooklyn, New York 11233 ("Eastern Parkway Property"); 127 Herkimer Street, Brooklyn, New York 11216 ("Herkimer Property"); 101 Rogers Avenue, Brooklyn, New York 11216 ("Rogers Property"); 966 East 49th Street, Brooklyn, New York 11203 ("49th Street Property"); 329 Beach 45th Street, Far Rockaway, New York 11691 ("Beach Property"); and 11 Cooper Street, Brooklyn, New York 11207 ("Cooper Property") (collectively, the "Properties").

The City's interests in the Properties include but are not limited to, housing violations issued by the New York City Department of Housing Preservation and Development ("HPD"), judgments issued by the New York City Environmental Control Board (ECB"), and notices of sidewalk violations issued by the New York City Department of Transportation ("DOT"), all of which remain open and/or unpaid. See City's proposed Ancillary Petition, along with attending evidence, annexed to the Declaration of Joy T. Anakhu dated February 11, 2022 ("Decl. Anakhu"), as Exhibit "A". The City did not receive direct notice of the forfeiture action and therefore was not able to timely assert/preserve these important interests under 21 U.S.C. §853(n)[1].

---

[1] It appears the City may also have an interest in other properties where Final Forfeiture Orders were issued in this criminal action. This includes, but is not limited to Final Orders ECF Nos. 625, 626, 627, 706, 750, 775, and 838. Based on the service list included in these orders, the City did not receive direct notice of these forfeiture proceedings and therefore ask the court to consider re-opening the forfeiture proceedings as it relates to those properties so the City can submit ancillary petitions.

The City, therefore requests, that the Court grant the City's motion for relief of the Final Order because i) extraordinary circumstances concerning the City's interests require relief and the current order unfairly prejudices the City through no fault of its own; ii) no interested parties will be unfairly prejudiced if the forfeiture proceedings are re-opened, and iii) the Final Order as it stands provides those with title to the Properties with extraordinary relief far beyond the intent of the criminal forfeiture statutes.

## STATEMENT OF FACTS

On April 16, 2018, this Court issued a Consent Preliminary Order of Forfeiture as to Specific Property ("Preliminary Order"). See ECF No. 292. The Properties which are the subject of the City's motion, are included in said order. The Preliminary Order states that "[p]ursuant to 32.2 (b)(6)(A) of the Federal Rules of Criminal Procedure, the [U.S.] Government shall send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." Id. at ¶6. The Preliminary Order further notes that "[u]pon adjudication of all third-party interests, this court will enter a Final Order of Forfeiture concerning the Specific Property pursuant to Title 21, United States Code, Section 853(n), in which all interests will be addressed." Id. at ¶7.

It appears between May 3, 2018, and June 1, 2018, the U.S. Government posted a Notice of Forfeiture on its official website (www.forfeiture.gov) and sent notice of the Preliminary Order to several interested third parties. See Final Order of Forfeiture, ECF No. 664, pgs. 2-3. The City, its agencies, and related entities (i.e. HPD, ECB, the New York City Bureau of Highway Operations, and the New York City Parking Violations Bureau), were listed as interested parties. Id. pgs. 3,5. The addresses for the City included: 1 Centre Street, New York, NY 10007, 66 John Street, 10th Floor, New York, NY 10038, 100 Gold Street, New York, NY 10038, and 40 Worth

2

Street, New York, NY 10007. Id. The City's Corporation Counsel, whose service address is 100 Church Street, New York, New York 10007, was not included in the list. Id.

Several third parties came forward and filed petitions as to their stated interest in the Properties. Id. pgs. 5-7. On December 6, 2019, the Court ordered that all rights, titles, and interests in the Properties were forfeited and vested in the United States of America. Id. pg. 7. Following the Court's Final Order, and pursuant to various stipulations, the U.S. Government remitted the Properties to several third parties. See ECF Nos 587, 609, 623, 636, 647, and 649. Also where applicable, creditors and/or other lienors were allowed to retain their interests in the remitted property. Such lienors include NYCTL 2017-A Trust and Bank of New York Mellon, retaining its tax lien on the Eastern Parkway Property, and US National Bank, retaining its mortgage lien on the Cooper Property. See Stipulations at ECF Nos.636, 649.

One of the beneficiaries of property remission was Melvin Shuler ("Shuler"), who received title to the Rogers Property and soon after transferred his interest to Nasir Holding Group 101 Corporation ("Nasir"). On November 19, 2021, Nasir, filed a quiet title action, under Article 15 of the New York Real Property Actions and Proceedings Law, in Kings County Supreme Court. In the quiet title action, Nasir is seeking inter alia, a declaration that clears the City's interests in the Rogers Property, including an Order to Correct housing violations issued by HPD and numerous ECB judgments[2]. See Nasir Holding Group 101 Corp. v. The City of New York et al., Index# 529804/2021.

---

[2] Nasir also seeks to quiet title as to any outstanding property taxes and violations issued by the New York City Department of Finance ("DOF"); however, DOF is not named as one of the noticed agencies in the Final Order (see ECF No. 664, pgs. 3-5). Nonetheless; to the Extent the U.S. Government meant to name this agency and its related interests, or to the extent the Final Order also applies to DOF, this motion also seeks relief for said agency.

Nasir cites the Court's Final Order as its basis for relief and purports to stand in the shoes of the U.S. Government that first acquired title. Id. Extraordinary circumstances warrant granting the City relief. The Properties, including the Rogers Property, have several housing violations that remain open.  At present, the Rogers Property, a twelve-unit apartment building, has 364 open violations issued by HPD, with over 200 of those violations listed as either *immediately hazardous* or *hazardous* (emphasis added). See HPD Order to Correct and a List of Violations for Rogers Property, annexed to Decl. Anakhu, as Exhibit "B".  Due to the numerous open violations and the classifications of immediately hazardous and hazardous conditions at the Rogers Property, HPD has selected the building for its Alternative Enforcement Program ("AEP"). See HPD's List of Buildings Added to AEP as of 2019, which includes the Rogers Property, annexed to Decl. Anakhu, as Exhibit "C".

Thus, this extraordinary circumstance and others, justify reopening the forfeiture action to allow the City to preserve its important interests.

**STANDARD OF REVIEW**

Fed. R. Civ. P. 60(b)(6) permits a party to obtain relief from judgment or court order in extraordinary circumstances justifying relief.  See also Buck v. Davis, 137 S.Ct. 759, 777-78 (2017).  Parties moving for relief under Rule 60(b) must show highly convincing evidence in support of the motion; good cause for failing to act sooner; and lack of prejudice to the other parties.  Kotlicky v. U.S. Fidelity & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987).  The court in evaluating a Rule 60(b)(6) motion may also consider factors such as the risk of injustice to the parties in the case, the risk that denial will produce injustice in subsequent cases, and the risk of undermining the public's confidence in the judicial process. Buck, 137 S. Ct. at 777-78 (2017); Liljeberg v. Health Services Acquion Corp., 486 U.S. 847, 864 (1988). Ultimately, Courts should 'scrutinize the particular set of circumstances of the case, and balance the interest in finality with

4

the reasons for the delay.' (United States v Peterson, 2013 US Dist LEXIS 64151 at *7 (S.D.N.Y. May 1, 2013)) (quoting PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 897 (2d Cir. 1983).

Finally, motions pursuant to Rule 60(b)(6) must be brought within a "reasonable time" following the judgment or order from which the movant seeks relief. Fed. R. Civ. P. 60(c); Peterson, 2013 US Dist LEXIS 64151 at *7. To assess whether a movant brought a 60(b) motion within a "reasonable time," the Court may consider the reason for the movant's delay and whether the non-movant will be prejudiced by granting the motion. Austin v. Donahoe, 307 F.R.D. 264, 267 (D.D.C. 2014).

## ARGUMENT

## POINT I

### THE CITY IS ENTITLED TO RELIEF FROM THE FINAL ORDER BASED ON EXTRAORDINARY CIRCUMSTANCES

The court should grant the City's motion for relief as the City has valid interests in the Properties, has good cause as to the late filing of an ancillary petition, and no parties will be prejudiced by the reopening of the forfeiture action.

**1. The City Has Valid Interests In The Properties That Must Be Preserved**

As a municipal corporation, the City must regulate various municipal activities, such as housing, sanitation, transportation, and building maintenance, to protect public health and safety. See generally NYC Charter Chapters 26 Department of Buildings, 31 Department of Sanitation, 61 Department of Housing Preservation and Development, and 71 Department of Transportation. Housing safety includes the issuance of violations and corrective orders to ensure housing codes are followed, while transportation safety includes the issuance of violations notices so that sidewalk defects are repaired. Likewise, sanitation and building oversight involve the issuance of summonses to maintain structural safety as well as safe and clean streets.

5

Here, and as it relates to public housing health and safety, the City has several open housing violations on the Properties that must remain until cured. As noted *supra*, the Rogers Property has approximately 364 open violations issued by HPD, (see Exhibit "B", annexed to Decl. Anakhu), with over 200 of those violations listed as either Class C violations, *immediately hazardous* or Class B violations, *hazardous*[3]. Id. Some of the immediately hazardous conditions include failure to notify occupants and/or investigate lead-based paint hazards as mandated by New York City Administrative Code ("NYC Admin. Code") §27-2056.4; failure to abate the infestation of mice/roaches as mandated by NYC Admin. Code §27-2017; and failure to repair and abate the evidence of water leaking at the ceiling as proscribed by NYC Admin. Code §27-2026, 2027[4]. As noted previously, due to the numerous open violations and the classifications of immediately hazardous and hazardous conditions at the Rogers Property, HPD has selected the building for its Alternative Enforcement Program ("AEP"). See Exhibit "C", annexed to Decl. Anakhu.

AEP is an enforcement program for buildings with many housing code violations that remain open. See https://www1.nyc.gov/site/hpd/services-and-information/alternative-enforcement-program-aep.page. "The goal of the program is to improve housing conditions by performing frequent inspections to monitor corrections of violations and to issue Orders to Correct

---

[3] The law establishes three classes of housing code violations which are "A", *non-hazardous*; "B", *hazardous*; or "C", *immediately hazardous*. Classification is based on the effect of the violation upon the life, health and safety of the occupants of the building and upon the public. See NYC Admin. Codes §27-2001 through §27-2152.

[4] It should be noted that HPD has a pending housing court action against the owner(s) of the Rogers Property. See In the Matter of the Application of the Department of Housing Preservation and Development of the City of New York, For An Order to Provide Access to Premises Known As 101 Rogers Avenue, Brooklyn, 11216, HP Index# 309575/21. HPD is seeking a warrant to gain access to the Rogers Property in order to make emergency repairs to the premises. See also HPD Housing Court Petition against the Rogers Property, annexed to Decl. Anakhu, as exhibit "D".

6

if the owner of the building fails to act." Id. HPD, through its enforcement program, has issued Orders to Correct at the Rogers Property and now Nasir is seeking to have the order cleared from the property's title without taking the necessary steps to cure the violations. If allowed to do so, it would provide Nasir with an extraordinary benefit far beyond the intent of the criminal forfeiture statutes and potentially puts several inhabitants' safety at risk. Open violations on the Rogers Property start as early as 2005 and are as recent as 2021 and counting. Neither Nasir nor Shuler should be allowed to benefit from such a windfall based on the criminal enterprise of another.

Similarly, the Eastern Parkway Property[5], a building with approximately three units, has approximately 119 open HPD violations with over 80 classified as immediately hazardous or hazardous. See HPD Violations for the Eastern Parkway Property, annexed to Decl. Anakhu, as Exhibit "E". The Cooper Property has approximately 57 open violations, with approximately 41 classified as immediately hazardous or hazardous. See HPD Violations for the Cooper Property, annexed to Decl. Anakhu, as Exhibit "G". The Herkimer property has approximately 19 open violations, with approximately 14 classified as immediately hazardous or hazardous. See HPD Violations for the Herkimer Property, annexed to Decl. Anakhu, as Exhibit "H"). The Beach 45th Street Property has approximately 7 open violations all of which are classified as either immediately hazardous or hazardous. See HPD Violations for the Beach 45th Street Property P, annexed to Decl. Anakhu, as Exhibit "I".

Some of the Properties, including the 49th Street Property, also have outstanding ECB judgments which stem from summonses issued by the New York City Department of

---

[5] HPD also has a pending action in housing court against the owner(s) of the Eastern Parkway Property related to heat and hot water. See Department of Housing Preservation and Development of the City of New York v. Martin Development & Management, LLC, Lorenzo Martin, HP 31131/21. A copy of the Housing Court Verified Petition is annexed as Exhibit "F" to Decl. Anakhu.

Building ("DOB") (i.e. "Failure to maintain the building in [a] code complainant manner") and/or the New York City Department of Sanitation "(DSNY") (i.e. "Dirty Sidewalk/Dirty Area"). See ECB List of open judgments for the Properties, annexed to Decl. Anakhu, as Exhibit "J".

Finally, both the Eastern Parkway Property and the 49th Street Property have sidewalk violations issued by DOT that remain open. See a copy of the DOT Notice of Violations and Preliminary Inspection Reports, annexed to Decl. Anakhu, as Exhibit "K".

Based on the foregoing, the City has shown it has valid interests in the Properties, all related to public health and safety, and therefore must remain until cured.

### 2. The City Has Good Cause For Its Delay In Filing An Ancillary Petition

The City has good cause for its delay in filing a petition in the forfeiture action as it did not receive direct notice. See Supplemental Rules G4(b)(i) of the Fed. R. Civ. P. The Preliminary Order in this matter states that "the [U.S.] Government shall send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." See Preliminary Order, ECF No. 292, ¶6. While the U.S. Government identified the City (and its related agencies/entities) as a potential claimant in the forfeiture action (see Final Order, ECF No. 664, pgs. 3, 5), it did not serve notice upon the City through the City's Corporation Counsel. Id. According to Fed. R. Civ. P 4(j)(2)(B), "service upon a state, municipal corporation or any other state-created governmental organization may be effectuated in accordance with the service rules for such a defendant prescribed by the state's law." United States v John, 2020 US Dist LEXIS 36708, at *33 (EDNY Mar. 2, 2020).

New York Civil Practice Law and Rules ("CPLR") §311(a)(2), which governs the proper method of service upon the City of New York, provides in pertinent part that personal service upon the City of New York shall be made to the Corporation Counsel. CPLR §311(a)(2). See also United States v John, 2020 US Dist LEXIS 36708, 126 A.F.T.R.2d (RIA) 2020-5786

(EDNY Mar. 2, 2020); Miss Jones LLC v Brown, 2020 US Dist LEXIS 148140, at *9 (EDNY Aug. 14, 2020); Nacipucha v City of New York, 18 Misc 3d 846, 852 (Sup Ct, Bronx County 2008). As noted in New York City Charter Chapter 17, §394(a), "the corporation counsel shall be attorney and counsel for the *city* and every *agency* thereof and shall have charge and conduct of all the law business of the city and its agencies and in which the city is interested." (emphasis added) Id. See also Exxon Mobil Corp. v. N.Y. City Dep't of Envtl. Prot., 114 N.Y.S.3d 88, 178 A.D.3d 696, 698 (N.Y. App. Div. 2d Dep't 2019).

The appropriate address for the Corporation Counsel is 100 Church Street, New York, New York 10007. See United States v John, 2020 US Dist LEXIS 36708, at *34; see also Sac Fund II 0826 v Burnell's Enters., Am. Bug Co., A/K/A Am. Bug Co., Ronald Bassett As Ex'r of the Estate of Adell D. Bassett, 2019 US Dist LEXIS 193952 (EDNY Sep. 7, 2019); Sagy v City of New York, 2019 NY Slip Op 33516[U], *4-5 (Sup Ct, Queens County 2019). Here, the City, its agencies, and related entities were served at the following addresses: 1 Centre Street, New York, NY 10007, 66 John Street, 10th Floor, New York, NY 10038, 100 Gold Street, New York, NY 10038, and 40 Worth Street, New York, NY 10007. See Final Order, ECF No. 664, pgs. 3, 5. None of the addresses noticed by the U.S. Government include the City's Corporation Counsel's service address. Based on the foregoing, the City has good cause for its delay in filing an ancillary petition and should be granted relief of the Final Order.

### 3. Reopening The Forfeiture Case Concerning The City's Interest Will Not Unfairly Prejudice Other Parties

None of the parties will be unfairly prejudiced if the court reopened the forfeiture action to allow the City to preserve its important interests. It is the responsibility of all owners or persons in charge to keep their properties free from obstructions and nuisances of every kind and to keep them clear of garbage, litter, and other offensive materials. See NYC Admin. Code §16-

9

118(2)(a). This applies whether the owner caused the obstruction/nuisance or whether it was caused by another. Likewise, it is the responsibility of all owners to maintain and keep their building, including the land it sits on, in safe and working condition. See NYC Admin Code §28-301.1. It is also the responsibility of owners to ensure that sidewalk defects are corrected. See NYC Admin Code §19-152. Finally, owners must keep their property in good repair for their tenants. See NYC Admin. Code §27-2005.

The City has a strong public interest in protecting its nearly nine million inhabitants from the dangers that arise from housing code violations, sidewalk and building hazards, as well as unsanitary living environments. That interest also involves putting the public on notice of such potential hazards. Allowing violations, especially those classified as immediately hazardous and hazardous to be cleared from the Properties without requiring correction, not only amounts to an extraordinary recovery for any owner but also potentially puts New Yorkers at risk.

Further, no party can argue that they were unaware of the City's interests since much of the interests predate the alleged crimes. Moreover, the U.S. Government already identified the City as a potential third-party claimant, and data related to summonses and violations are publicly available. See DOB Building Information Search, https://a810-bisweb.nyc.gov/bisweb/bispi00.jsp (Property Search, Complaints/Violations, Boiler Search, Gas Service, Elevator Devices, Crane & Derricks, Power Authorizations); HPD Building Data https://www1.nyc.gov/site/hpd/about/hpd-online.page (Complaints and Litigation, Property Registration, Violations and Charges, Block and Lot Information); and ECB Violations https://a836-citypay.nyc.gov/citypay/ecb. See also Cruz v. Credit Control Servs., Inc., U.S. Dist. LEXIS 519225, at *3 (E.D.N.Y. Nov. 8, 2017) (noting the court's ability to take judicial notice of publicly available documents on government websites). Had the City been properly notified of the

forfeiture action, it would have timely filed an ancillary petition and arguably would have had its interest protected. Therefore, there is no risk of unfair prejudice or negative consequences by granting the City's motion for relief and in reopening the forfeiture proceedings to preserve such important public interests.

By reopening the forfeiture proceedings, the court strengthens public confidence in the judicial system and makes it clear that violations must be corrected before they can be removed. This is for the greater good of all New Yorkers. The goal of a criminal forfeiture action is to prevent future crime and punish the guilty (see United States v. Peters, 732 F.3d 93, 98-99 (2d Cir. 2013); Pacheo v. Serendensky, 393 F.3d 348, 355 (2d. Cir. 2004)), but this is distinct from the restitution provided to victims which are "intended to return the victim and the perpetrator to the status quo that existed before the violations took place." Peters, 732 F.3d at 101. Here, even where remission is possible to make victims whole, it is an extraordinary windfall for an owner to have violations wiped away when statutorily they are responsible for the maintenance and upkeep of their property.

POINT II

**THE CITY'S MOTION IS MADE WITHIN A REASONABLE TIME**

Under Fed. R. Civ. P. 60(c), the City brings the instant motion for relief within a reasonable time. In deciding whether motions brought under this rule are timely, courts consider factors as to the reason for the delay and whether the non-movant will be prejudiced if the relief is granted. See also Wang v. IBM, 2021 U.S. App. LEXIS 2205, at *5 (2d Cir. 2021). Here, the City became aware of the forfeiture action after Nasir filed a quiet title action in Kings County Supreme Court seeking to clear the City's interests, which included an HPD order to Correct and ECB judgments on the Rogers Property. Before that filing, the City had not received direct notice

11

of the forfeiture action and therefore had not filed an ancillary petition as outlined within 21 U.S.C §853(n)(2). Additionally, no parties will be prejudiced as all parties were on notice of the City's interests in the Properties, which includes housing and sidewalk violations that must be corrected to be removed. Thus the instant motion for relief is timely as required under the rules.

Finally, and as noted in footnote "1" of this motion, it appears the City may also have an interest in other properties where Final Orders of Forfeiture were issued. This includes, but is not limited to Final Orders: 625, 626, 627, 706, 750, 775, and 838. Based on the Service list included in these orders, the City did not receive direct notice for these forfeiture matters and asks the Court to consider re-opening those proceedings to allow the City to submit any necessary petitions.

## CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court grant the City's motion for relief pursuant to Fed. R. Civ. P. 60(b) of the Final Order, accept its ancillary petition, reopen the forfeiture action, schedule a hearing so that the City may be heard, and grant such further relief as the Court deems just and proper.

Dated:    New York, New York
          February 11, 2022

GEORGIA M. PESTANA
Corporation Counsel of the City of New York
*Attorney for Non-Party Petitioner, City*
100 Church Street
New York, New York 10007
(212) 356-2048

By: _____
    Joy Anakhu
    Senior Counsel

12